IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL BLAKENEY and TIFFANY BLAKENEY, <br><br> Plaintiffs, <br><br> v. <br><br> PACKAGING CORPORATION OF AMERICA; R.D. STEWART COMPANY, <br><br> Defendants | 2:23-cv-1453-NR |

**MEMORANDUM ORDER**

Before the Court are motions *in limine* filed by Plaintiffs Michael and Tiffany Blakeney (ECF 63; ECF 64; ECF 65; ECF 71), Defendant Packaging Corporation of America (ECF 70; ECF 73; ECF 76; ECF 78), and Defendant R.D. Stewart Company (ECF 67). The Court issues this omnibus order resolving the motions as follows.

**I.     The Court excludes evidence of the Alarmco lawsuit (ECF 62).**

The Blakeneys argue that evidence related to Mr. Blakeney's lawsuit against Alarmco Security Systems, Inc. (his former employer) should be excluded as improper "other acts" evidence and because it is not relevant and is otherwise unduly prejudicial. ECF 62. The Court agrees that evidence of that lawsuit must be excluded, based on Rule 403.

While the Alarmco lawsuit is somewhat related to this lawsuit, any relevance is substantially outweighed by the prejudice to the Blakeneys. In the Alarmco lawsuit, Mr. Blakeney alleges that Alarmco discriminated against him by not accommodating his disability, wrongfully discharged him, and failed to pay him overtime wages, among other claims. ECF 94-2. Mr. Blakeney does not allege a personal-injury claim in that lawsuit. *Id.* At most, the complaint alleges some facts

about the injury in this case, but those facts are entirely peripheral to that lawsuit. Thus, the lawsuit has very little probative value here.

On the other side of the scale is the prejudice, which also includes the risk of juror confusion. "Evidence relating to previous litigation" is the type of evidence that is routinely excluded under Rule 403. *Blancha v. Raymark Indus.*, 972 F.2d 507, 516 (3d Cir. 1992). The Blakeneys will be prejudiced by the admission of the Alarmco lawsuit because it could cause the jury to draw a negative inference against Mr. Blakeney that he is litigious, and very likely could cause the jury to be confused about whether the damages Mr. Blakeney claims in that lawsuit have any bearing on this one.

Thus, the Blakeneys' motion (ECF 62) is granted, and evidence of this lawsuit is excluded.

## II. The Court excludes evidence of Mr. Blakeney's alleged cursing at Dr. Gaffney (ECF 63).

The Blakeneys seek to exclude evidence that Mr. Blakeney cursed at Dr. Gaffney during an appointment to remove his stitches. ECF 63, ¶ 9. The Blakeneys argue that this evidence is irrelevant and even if it is relevant, the probative value is substantially outweighed by unfair prejudice under Rule 403. R.D. Stewart and PCA both argue that this evidence is relevant because it is part of Mr. Blakeney's treatment and because it is part of Mr. Blakeney's post-accident medical history. ECF 86; ECF 99.

The Court agrees with the Blakeneys. Whether Mr. Blakeney did or did not curse at Dr. Gaffney during the appointment to remove Mr. Blakeney's stitches has no bearing on any claim or defense on this case. Defendants' arguments that this evidence is relevant are not persuasive—while Mr. Blakeney's curses may be memorialized in his medical record, such evidence is not relevant to this case. Even if Mr. Blakeney's statements were relevant, any relevance would be substantially

outweighed by prejudice, because the statements would quite obviously negatively influence the jury's perception of Mr. Blakeney.

Therefore, any evidence that Mr. Blakeney cursed at his doctor is inadmissible.

### III. The Court does not exclude evidence of the wedding ring (ECF 64).

The Blakeneys have filed a motion *in limine* seeking to exclude evidence that Mr. Blakeney was wearing his wedding ring at the time of the accident. The Blakeneys do not dispute that this evidence is relevant, but instead argue that it is unduly prejudicial under Rule 403. After balancing the relevance and the potential prejudice here, the Court cannot conclude that the prejudice here substantially outweighs the relevance of the ring, and so the motion is denied.

Evidence that Mr. Blakeney was wearing the ring at the time of the accident goes to the issue of causation and comparative negligence. And the Court agrees with Defendants that while no expert opined that the ring specifically caused the injury, the evidence here reflected that the ring broke at or around the same location of the injury to Mr. Blakeney's adjacent pinky. This is circumstantial evidence as to a potential cause or contributing factor that the jury may consider, and no expert is needed for the jury to assess this type of evidence.

Against the probative value of this evidence, the Court can discern no undue prejudice, let alone prejudice, that might substantially outweigh the relevance of the ring.

For these reasons, the Court will allow Defendants to introduce evidence that Mr. Blakeney wore his ring, as well as any procedures or rules regarding the same.

### IV. The Court excludes evidence of unauthenticated medical records (ECF 71).

The Blakeneys seek to exclude Mr. Blakeney's medical records as inadmissible hearsay. ECF 71. PCA and R.D. Stewart argue that the medical records are admissible under the business records exception (Fed. R. Evid. 803(6)) or, in the

alternative, as statements made for medical diagnosis or treatment (Fed. R. Evid. 803(4)).  ECF 88; ECF 100.

While the motion is framed as a hearsay objection, the crux of the Blakeneys' objection is lack of authentication.  The Blakeneys concede that the records otherwise qualify as business records.  And it appears that they also qualify as statements made for medical diagnosis.

But the Court agrees with the Blakeneys that even though the records may fall within a hearsay exception, those records still must be authenticated by a witness or through the appropriate custodian declaration.  Contrary to Defendants' position, simply because the documents were produced by the Blakeneys in discovery, that doesn't meet the requirements for authentication.

Thus, the motion is granted, and the records may not be introduced absent a witness or custodian providing sufficient foundation to authenticate the documents at trial.

## V. The Court excludes evidence of other allegedly hazardous conditions at the PCA facility (ECF 76).

PCA seeks to exclude evidence of other hazardous conditions that existed at its facility at the time of the accident because it is irrelevant.  ECF 76.  The Blakeneys argue that the evidence is relevant and should be admissible, including for impeachment purposes.

Evidence of other hazardous conditions at the PCA facility, including other protruding bolts, is not relevant here because it does not relate to whether PCA was negligent regarding the bolt at issue.  Therefore, the motion is granted and the evidence is excluded.

That said, if PCA places this at issue at trial and opens the door to the conditions more generally at the facility, then the Blakeneys may use the evidence for impeachment.

## VI. The Court excludes evidence of subsequent remedial measures (ECF 65; ECF 67, No. 1; ECF 70).

The parties have filed motions *in limine* pertaining to the admissibility of evidence of PCA cutting the bolt at issue after the accident. Defendants argue that this is a subsequent remedial measure, and therefore inadmissible under Rule 407. The Blakeneys argue that they intend to introduce the evidence not to prove negligence, but instead as evidence of feasibility of the precaution. For the reasons that follow, the Court finds that this evidence is inadmissible. However, if at trial, Defendants "open the door" on the issue, the evidence of the bolt-cutting may be used for impeachment purposes.

To begin with, "[t]he Federal Rules of Evidence expressly preclude the introduction of evidence of subsequent remedial measures to prove a party's negligence or culpable conduct." *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 415 (3d Cir. 2002); Fed. R. Evid. 407. However, such evidence may be admitted when offered "for another purpose, such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary measures." Fed. R. Evid. 407. The Blakeneys make two arguments as to why Rule 407 does not apply—but neither of those arguments are persuasive here.

First, the Blakeneys argue that evidence that PCA cut the bolt should come in because it proves the feasibility of the measure. ECF 65, p. 4. Feasibility "denotes whether it would have been practical to have employed [a measure] earlier" which is "different from whether a claimed wrongdoer knew or should have known, but nonetheless did not employ, remedial measures earlier." *Wetherill v. Univ. of Chicago*, 565 F. Supp. 1553, 1557 (N.D. Ill. 1983). Importantly, for the feasibility exception to apply, feasibility must actually be controverted. *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir. 1982).

Here, Defendants have made clear that they do not intend to contest feasibility of the precaution—specifically, that the bolt could have been cut shorter. ECF 93, p. 4; ECF 85, p. 4. Because feasibility is not being contested, the exception to Rule 407 does not apply.[1]

Second, the Blakeneys argue that Rule 407 does not apply as to R.D. Stewart, because it was PCA that cut the bolt, and so only PCA would gain the protection of Rule 407. The Court disagrees.

True, "Rule 407 does not apply to subsequent remedial measures taken by a non-party." *Diehl v. Blaw-Knox*, 360 F.3d 426, 430 (3d Cir. 2004). However, PCA is not a non-party—it is a co-defendant in this case. *Id.* (Rule 407 "is not implicated where the evidence concerns remedial measures ***taken by an individual or entity that is not a party to the lawsuit***." (emphasis added)). The idea behind allowing such evidence to be admissible as to a non-party is that a non-party does not bear the risk of any liability. *Id.* ("The admission of remedial measures by a non-party necessarily will not expose that non-party to liability, and therefore will not discourage the non-party from taking the remedial measures in the first place."). But

---

[1] The Blakeneys cite some evidence in the record to suggest that during discovery, Defendants contested feasibility. That Defendants took that position during discovery doesn't mean that they will take that position at trial. Indeed, Defendants very clearly have represented that they are not contesting feasibility. ECF 85, p. 4; ECF 93, p. 4. Moreover, the deposition testimony that the Blakeneys cite does not really reflect that Defendants contest feasibility. The Blakeneys cite to Carrie Boord's deposition, as Ms. Boord testified that she did not believe the bolt was dangerous. ECF 83, p. 3. However, Ms. Boord's testimony does not indicate that it was impossible to cut the bolt before the accident; she simply testified that she did not see it as a safety issue. ECF 82-2; ECF 82-4. The Blakeneys also cite to Anthony Arcuri's deposition to argue that R.D. Stewart is contesting feasibility. ECF 65, p. 6. However, at the time of his deposition, Mr. Arcuri was no longer employed by R.D. Stewart, and thus was not testifying as an agent of R.D. Stewart. *See* ECF 85-1. Because neither PCA nor R.D. Stewart has placed feasibility at issue, the feasibility exception does not apply.

PCA, as a party here, is exposed to liability. And there would be no way to fashion a limiting instruction here that would allow the Blakeneys to introduce the subsequent remedial measure as to R.D. Stewart but not otherwise implicating PCA.[2]

For these reasons, any testimony and evidence as to PCA's subsequent cutting of the bolt is excluded. All that said, if Defendants during trial "open the door" to this evidence—for example, by contesting feasibility or by quibbling with the Blakeneys' expert's failure to examine the bolt at issue—then the Blakeneys may use this evidence for impeachment purposes.

### VII. The Court will not instruct the jury on spoliation (ECF 65; ECF 73).

The Blakeneys argue that PCA spoiled evidence by cutting and discarding the bolt that Mr. Blakeney alleges caused the accident. ECF 65, ¶ 21. The Blakeneys ask for a spoliation instruction to be given to the jury as a sanction. *Id.*, ¶ 23. PCA requests that the Blakeneys be precluded from presenting evidence or testimony regarding spoliation. ECF 73.

The Blakeneys bear the burden of showing that spoliation occurred. *Carty v. Steem Monsters Corp.*, No. 20-5585, 2022 WL 17083645, at *4 (E.D. Pa. Nov. 18, 2022).

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012).

Applying these factors here, the Court finds that the Blakeneys have not met their burden of establishing spoliation. While the first two factors are met here, the

---

[2] The Court also finds that under Rule 403 that allowing introduction of the subsequent measure as to R.D. Stewart but not PCA would create undue prejudice that would substantially outweigh any probative value. The prejudice would be the spillover effect of this evidence on PCA and risk of juror confusion on the issue.

third and fourth are not. That is, with respect to the third factor—"actual suppression"—"a finding of bad faith is pivotal[.]" *Id.* at 79. But the evidence cited by the Blakeneys here does not reflect bad faith on the part of PCA; rather, it appears that PCA proceeded in good faith, by cutting the bolt to prevent against any tripping or other hazards. *See* ECF 81 (citing Boord deposition). Bolstering the absence of bad faith is the fact that PCA took photographs of the bolt before it cut it (and produced those to the Blakeneys in discovery, *see* ECF 73), and thus this isn't a situation where evidence was destroyed in bad faith to suppress the truth. *Taylor v. Nepolean*, No. 20-1450, 2021 WL 4171423, at *4 (W.D. Pa. Sept. 14, 2021) (Dodge, M.J.) (spoilation occurs where there is "fraud and a desire to suppress the truth" (cleaned up). The fourth factor isn't met either. The Blakeneys haven't established that it was reasonably foreseeable to PCA that it would be sued, because PCA cut the bolt in the week after the accident, and there is no indication that the Blakeneys made a demand or any claim against PCA before then. *See* ECF 74-5. This incident also wasn't a catastrophic injury or workplace death, such that it would have been reasonably foreseeable to PCA that it would be sued. While not to minimize Mr. Blakeney's injury, a finger injury isn't one that ordinarily ripens into litigation. The Blakeneys' assertion that PCA should have reasonably foreseen litigation because a subcontractor was injured within the PCA facility, without more, is not enough to meet their burden to show that spoliation occurred. *Cianci v. Phoenixville Area Sch. Dist.*, No. 20-4749, 2022 WL 824026, at *6 (E.D. Pa. Mar. 18, 2022) (holding that anticipation of litigation is a fact-specific inquiry and defendant was not on notice of claims due to the facts of that case).

Finally, the Blakeneys also argue that the ladder was not preserved. Regarding the ladder, the Blakeneys "do not contend that PCA did anything to destroy or hide the ladder," so any evidence related to spoliation of the ladder will also be excluded. ECF 80, ¶ 17.

For these reasons, the Court finds that the Blakeneys have not met their burden to establish spoliation of the bolt (or ladder), and so no adverse-inference instruction will be given, and the parties are precluded from introducing evidence or testimony that PCA destroyed the bolt or ladder.[3]

## VIII. The Court excludes evidence of the alleged apology (ECF 67, No. 2; ECF 78).

R.D. Stewart and PCA seek to preclude evidence of an alleged apology that an unidentified individual made to Mr. Blakeney. ECF 67; ECF 78. R.D. Stewart also seeks to exclude a statement from Mr. Gualardo's expert report stating that PCA admitted that it cut the bolt because it caused Mr. Blakeney's injuries and that PCA apologized for the accident. ECF 67, ¶ 31. The Court will grant these motions because the apology is inadmissible hearsay.

There are two potential references to an alleged apology. First, Mr. Blakeney testified that after the accident, an unidentified individual told Mr. Blakeney's co-worker that she apologized for what happened. ECF 78, ¶ 5 (quoting Mr. Blakeney's deposition testimony). Second, there exists a text message from Corinne McKague, who is an employee of Alarmco, stating that the "administrative staff" at the facility (presumably PCA staff) apologized to Mr. Blakeney. ECF 67, ¶ 24.

Hearsay is a declarant's statement not made while testifying at the current trial that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

This first alleged apology was undoubtedly not made while testifying in this matter, and the Blakeneys are trying to assert it for the truth of the matter—that

---

[3] Even if the Court were to find spoliation, an adverse-inference instruction would be inappropriate. An adverse-inference instruction is a "severe sanction" limited to "egregious acts of spoliation." *State Farm Fire & Cas. Co. v. Cohen*, No. 19-1947, 2020 WL 5369626, at *5 (E.D. Pa. Sept. 8, 2020). This isn't an "egregious act," especially considering that PCA took photographs of the bolt at issue before PCA cut it.

PCA caused Mr. Blakeney's injuries such that an apology was warranted. While the Blakeneys argue that the apology can come in as an opposing party statement under Rule 801(d)(2), it cannot, because the declarant wasn't identified. The Blakeneys speculate that this apology came from the "plant controller" and "we know the plant controller refers to Ms. Boord." ECF 96, p. 5. However, the Blakeneys do not cite to any evidence in the record to support this statement. Without supporting evidence, it is impossible to know the identity of the declarant, and thus the statement is inadmissible as an admission of a party opponent. *Harris v. Midas*, No. 17-95, 2019 WL 5294266, at *4 (W.D. Pa. Oct. 18, 2019) (Bissoon, J.).

As to the text message, the same is true. The apology is being asserted for the truth of the matter—*i.e.*, a recognition of blame. And, again, contrary to the Blakeneys' position, the party-opponent exception does not apply. Ms. McKague is not an employee of PCA or R.D. Stewart, so her receipt of the text message cannot be admitted as a statement of a party opponent. Additionally, the Blakeneys cannot identify who the declarant was—they identify the declarant as "administrative staff." ECF 98, p. 2. If the identity of a declarant is unknown, it is impossible to know whether the statement was made in a representative capacity. *See Harris*, 2019 WL 5294266, at *4. Without the identification of a specific declarant who was acting in a representative capacity as to PCA, the alleged apology in the text message is inadmissible.

Thus, R.D. Stewart's motion (ECF 67) and PCA's motion (ECF 78) are granted as to the alleged apology. Evidence of the apologies is excluded. Additionally, because evidence of the alleged apology is inadmissible, the statement in the expert report discussing the alleged apology is also excluded.

**IX. The Court does not exclude evidence related to the depiction of a ladder (ECF 67, No. 3).**

R.D. Stewart seeks to preclude evidence of a photograph of a ladder in Mr. Blakeney's deposition and photograph of a ladder and related statements in the expert report of Mr. Gualardo. R.D. Stewart argues that because the ladder pictured in the deposition exhibit and referenced in the report is not the ladder that was actually involved in the accident, it should be excluded.

This evidence is relevant because a depiction of the type of ladder Mr. Blakeney was carrying at the time of the accident is directly related to the claims in the case. The probative value is not substantially outweighed by prejudice because there is probative value in showing the jury what a similar ladder looked like. And risk of prejudice or risk of juror confusion will be mitigated by the simple explanation of the similarities or dissimilarities between the pictured ladder and the ladder at issue. Any dissimilarities between the ladders pictured in the exhibits and discussed in the expert report goes to the weight, not the admissibility, of this evidence. *Quagliarello v. Dewees*, No. 09-4870, 2011 WL 3438090, at *4 (E.D. Pa. Aug. 4, 2011). Thus, this motion is denied.

Thus, the motion is denied, and the Blakeneys and their expert may refer and introduce evidence as to the ladder depicted in the report.

**X. The Court does not exclude portions of Mr. Gualardo's expert report (ECF 67, No. 4).**

R.D. Stewart seeks to exclude portions of Mr. Gualardo's expert report, including: (1) sections related to the photograph of a ladder that is not the actual ladder involved in the accident; (2) a section of the expert report that mentions the alleged apology to Mr. Blakeney; (3) sections involving alternative theories as to which part of the ladder caught on the bolt; and (4) Mr. Gualardo's description of Mr. Blakeney's injuries. ECF 68.

As to the expert's testimony related to the photograph of the ladder and the alleged apology, the Court has already analyzed these issues above. The Blakeneys' concerns about the photograph of the ladder in the expert report go to the weight, not the admissibility, of the evidence and will not be excluded. The section of the expert report referencing the alleged apology, however, will be excluded.

R.D. Stewart argues that the sections of Mr. Gualardo's report related to the cause of the action are not reliable because Mr. Gualardo presents several alternative theories. However, Mr. Gualardo always maintains in his report that the ladder caught on the bolt—his "alternative theories" are related to the parts of the ladder that could have caught on the bolt. Because experts are not required to rule out every possible cause, this evidence is admissible. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999).

The "medical diagnosis" R.D. Stewart seeks to exclude is Mr. Gualardo's statement that as a result of the accident, "Mr. Blakeney suffered serious and disabling injuries and permanent scarring." ECF 67-7, p. 5. In the Court's view, this hardly qualifies as a medical diagnosis. The Blakeneys do not dispute that Mr. Gualardo is not qualified as a medical expert and assert that he is not being offered as a medical expert. Because this statement is not a formal medical diagnosis, this statement will not be excluded.

Accordingly, this motion is granted in part and denied in part. Expert evidence regarding the photograph of the ladder, the statement about Mr. Blakeney's injuries, and the cause of the accident is admissible. Evidence of the apology is not.

**XI.    The Court excludes evidence of insurance coverage (ECF 67, No. 5).**

R.D. Stewart seeks to exclude evidence of insurance coverage under Rule 411. ECF 67. The Blakeneys do not oppose this motion. ECF 95. Thus, this motion is granted.

## XII. The Court excludes Dr. Sotereanos's statement about insurance (ECF 67, No. 6).

Finally, R.D. Stewart seeks to exclude Dr. Sotereanos's statement in his videotaped deposition that he does "far more narrative reports, far more defense, defending my patients than [he does] for defending the insurance companies." ECF 67-10. R.D. Stewart contends that this statement, although perhaps an inadvertent reference to insurance, should be excluded under Rule 411. The Blakeneys argue that the reference to insurance was inadvertent, does not indicate there was insurance present in this case, and goes to Dr. Sotereanos's bias. ECF 96.

Evidence related to insurance is inadmissible under Rule 411 because of the possibility that if juries are aware of liability insurance, they will improperly consider the insurance when deciding liability. *Gadley v. Ellis*, No. 13-17, 2015 WL 4412768, at *2 (W.D. Pa. July 17, 2015) (Gibson, J.). Although the mere mention of insurance is not fatal, it often requires a curative instruction. *Corbett v. Borandi*, 375 F.2d 265, 271 (3d Cir. 1967). Here, the mention of insurance in Dr. Sotereanos's videotaped deposition should be excluded because it has the potential to mislead and confuse the jury, and suggest to the jury that R.D. Stewart is carrying liability insurance for the claim at issue.

Accordingly, R.D. Stewart's motion is granted, and this portion of his testimony is excluded.

********************

For the reasons stated above, it is hereby **ORDERED** that the Blakeneys' motion to exclude evidence of the Alarmco lawsuit (ECF 62) is **GRANTED**. The Blakeneys' motion to exclude evidence of Mr. Blakeney's interaction with Dr. Gaffney (ECF 63) is **GRANTED**. The Blakeneys' motion to exclude evidence of the wedding ring (ECF 64) is **DENIED**. The Blakeneys' motion to admit evidence regarding subsequent remedial measures and request for a spoliation instruction (ECF 65) is

**DENIED**. The Blakeneys' motion to exclude medical records (ECF 71) is **GRANTED**. PCA's motion to exclude evidence of subsequent remedial measures (ECF 70) is **GRANTED**. PCA's motion to preclude evidence of spoliation (ECF 73) is **GRANTED**. PCA's motion to exclude evidence of other allegedly hazardous conditions (ECF 76) is **GRANTED**. PCA's motion to exclude evidence of an alleged apology (ECF 78) is **GRANTED**. R.D. Stewart's motion to exclude evidence of subsequent remedial measures (ECF 67, No. 1) is **GRANTED**. R.D. Stewart's motion to exclude evidence of an alleged apology (ECF 67, No. 2) is **GRANTED**. R.D. Stewart's motion to exclude evidence related to a photograph of a ladder (ECF 67, No. 3) is **DENIED**. R.D. Stewart's motion to exclude portions of Mr. Gualardo's expert report (ECF 67, No. 4) is **GRANTED IN PART** and **DENIED IN PART**. R.D. Stewart's motion to exclude evidence of insurance coverage (ECF 67, No. 5) is **GRANTED**. R.D. Stewart's motion to exclude Dr. Sotereanos's statement about insurance (ECF 67, No. 6) is **GRANTED**.

Dated: May 1, 2024

BY THE COURT:

/s/ J. Nicholas Ranjan
J. Nicholas Ranjan
United States District Judge